Good morning, and may it please the Court. Lee Tucker of the Federal Defender's Office for Mr. Mala Shorty. Mr. Shorty is asking this Court to reverse and vacate his conviction on the ground that it was the result of the result of a bench trial, but there was no valid waiver of his right to a jury in violation of his Sixth Amendment right. He also asks the Court to find that there was insufficient evidence to support a conviction on the four aiding and abetting charges. I would like to reserve two minutes for rebuttal, and I'll begin with the issue of the jury waiver. Roberts, before you start, can I ask you a question about that? Yes, Your Honor. So if we were to agree with you on your jury trial waiver argument, would that invalidate all of his convictions, or did he basically stipulate to his guilt on a couple of the felon and possession charges? Your Honor, it would invalidate all of the convictions as to all counts. Okay. I thought he didn't contest his guilt on a couple of the counts. That's what I was asking. Well, Your Honor, the reason it would invalidate his guilt — I mean, I'm sorry, invalidate his convictions is because if there's an invalid jury waiver under this circuit's precedence, that is a structural error, and anything — in other words, it's not a matter of trial error, and so the entire event would be — have been compromised. Okay. So he put — I mean, the trial judge had to actually make a finding of guilt. It wasn't like he just came in and said — That's correct, Your Honor. Okay. Sorry. Thank you. So as to the jury waiver issue, Rule 23a requires that a written waiver be filed. That was not done here. What — the reason I'm starting with that, it's not dispositive, but if there is a written waiver, that creates a presumption that the jury waiver has been valid. We don't have that here. Furthermore, we don't have a thorough oral colloquy, which can supply the missing ingredients in the event that the written waiver is not present. And furthermore, we have the third fact that Mr. Shorty is — suffers from significant cognitive impairment. He's learning disabled to the extent that since the age of 20, he's been on full social security benefits as a result of his cognitive disability, and he cannot read or write. So those three components put together lead to the conclusion that this is an invalid waiver and that his conviction should be reversed and vacated. To what extent do we rely on what the district judge was told at the time she accepted the waiver, and to what extent can that be confirmed, if at all, by the information provided in the pre-sentence report? Your Honor, are you referring to what she was told about his impairment? Yes. She was told basically — he said, I have a low IQ, I think. And what else was it before she accepted the waiver? The district court judge who initially accepted the waiver knew that he was — had a learning disability and, as he put it himself, a low IQ. Well, how did she know he had a learning disability other than what, about two statements with her before she accepted it? Your Honor, both the defense attorney and the defendant himself informed the judge of that fact. Okay. Is it relevant that he was — that she was told more than that at the time she received the pre-sentence report, or do we disregard that? In other words, is Your Honor suggesting that perhaps the district court should have sui sponte? No. No. I'm just asking if it's relevant that that information was confirmed subsequently by the — before sentence by the — Ah. Well, it's relevant for this Court's inquiry, because this Court can look at the entire record to determine whether or not all of the circumstances lead to a safe assurance that there was a valid waiver. So absolutely, it's relevant. And at that point, what we know now is that he's learning disabled, he's cognitively impaired, he cannot read or write at all, et cetera. So I do think that all of those pieces of information come together. And as this Court would know, in all of our circuit precedent, there would be no — no precedent to support an affirmation on these facts. We have five reported cases since 1985, and in none of those cases do we have a valid waiver. We have this Court affirming in the absence of a written waiver on a flawed and partial oral colloquy and with a defendant who is known to the Court to have serious cognitive problems. This Court has talked about it in terms of a special disadvantage in Duarte y Gareda. And I would — both U.S. v. Christensen and Duarte y Gareda indicate that where the district court is on notice that the defendant has certain vulnerabilities, whether mental or emotional, that the court then needs to do more. Here, the court didn't do more. In fact, it did less. It didn't meet the four basic requirements for ascertaining — for advising a defendant and then ascertaining a valid waiver. Mr. Shorty was only informed as to two of the four pieces of information. He wasn't informed that he would be able to help select the jurors, and he was not informed that their verdict had to be unanimous. And furthermore, I would like to point out, there was a fairly recent case from the circuit in which Judge Noonan was involved and dissented not on this issue, but the case was U.S. v. Preston from earlier this year. And that case, on the limited record one can see in the reported opinion, the judge there did do what should have been done here. They were — the judge was dealing with a mildly retarded, as they say, defendant, and the district judge explained to Mr. Preston what all of his rights were, and then made sure he understood by asking him to repeat back to the court what those rights were. And when you're dealing with the waiver of such a fundamental right and a compromised defendant, that is what should have been done here. But far from that, less was done here. No written waiver and no basic covering of the rights that he was relinquishing, much less a discussion with him to be sure he understood the seriousness of the rights at issue. You said you wanted to save two minutes for rebuttal. Yes, Your Honor. So perhaps this is a good time to go ahead and save my time. Thank you. Thank you. Thank you. Good morning. May it please the Court. My name is Dominic Lanza. I represent the United States. What distinguishes this case from the cases that have been relied on by the defense are three key factors bearing on the knowing and intelligent nature of the waiver of the jury trial. First and most important, this defendant had a prior jury trial in which he testified in his own defense. That jury trial resulted in a hung jury on one count and an acquittal on another count. It's hard to imagine a better piece of evidence in a case where one is asked retrospectively to look at whether the defendant understood what a jury trial is and understood the need for jury unanimity. How many years ago was that? I'm sorry, Judge Newnan, I couldn't hear you. How many years ago was that trial? How many years before this trial was the other trial? I'm sorry, Judge Newnan. How many years ago was the trial? The jury trial was in 1994. So that was, what, 15 years ago? And I understand that that's correct. I don't think that one can look that somehow every 10 years or so a defendant loses his knowledge of how jury trials work and that if a jury trial is far enough in the past, it ceases to have import when assessing the knowing and voluntary nature of a subsequent jury waiver. Furthermore, this prior Can I, just before you move on, though, so what case do you have that supports the proposition that we just look to figure out whether the defendant has gone through a jury trial before? Carmanate is the best case, Second Circuit case. In that case, very similar to this case. In fact, the colloquy in that case was less comprehensive than Judge Murguia's colloquy in this case before taking the waiver. And the Second Circuit focused on the fact that in that case, the defendant also had gone through a prior jury trial, and based significantly on that factor, the Second Circuit held that it was a technical error of no import that the colloquy in this case didn't touch on the need for unanimity, et cetera, because the defendant obviously knew about those things because he wasn't his first rodeo. He's been through this process before. In this case, furthermore, unlike Carmanate, Mr. Shorty's prior jury trial wasn't the only instance that sheds on his knowing, understanding of how a jury trial works. In his California conviction, where he was convicted of a felony via guilty plea, we've put in the record the trial court judge in that case made an express written factual finding that Mr. Shorty understood the nature of a jury trial and knowingly and intelligently waived that right. So both of those things are in the backdrop here when we get to what was in front of Judge Merguia at the time of the waiver session. And the California jury trial, of course, wouldn't tell you what the rules are in a Federal trial, but how long ago is that? That was in the early 90s as well. And then the defendant again pled guilty in 2000 in Arizona to an assault conviction. So we've got all of that backdrop, but those – that's just one of the factors in this case that takes it out of the ambit of some of the cases that have been cited by the defense. This is also a case where there were multiple discussions with Mr. Shorty right next to his retained attorneys in this case, where they discussed at length how this was a knowing, tactical choice that counsel had discussed at length with Mr. Shorty. And I think what's really important about this case, we had filed a motion at that point. Judge Merguia at a status conference said, I'm inclined to grant the motion, and as a result, Mr. Shorty won't be allowed to put on this defense. At that point, defense counsel first stated, well, we may then consider waiving a jury. And then at the subsequent merits hearing on the motion in Lemney, when Judge Merguia again suggested she was going to grant the motion, counsel said, well, in that case, based on all of these discussions I've had with Mr. Shorty, we're going to waive a bench trial so that we can present, excuse me, waive a jury trial, so we can present this very technical defense. Based on that waiver, Judge Merguia then changed course and said, in light of this tactical choice counseled by retained counsel to waive a jury, I am now going to allow the defendant to put in this evidence that I was previously inclined to disallow him from putting on. So again, this is a case where the defendant, a lot of prior experience with the jury system, retained counsel, lots of discussions with the defendant, makes a tactical counseled choice to waive a jury. The case, even this Court in Cochran, talked about how, Judge Reinhart, your decision in Cochran talks about how assurances from defense counsel about the discussions he's had with his client go a long way toward curing technical errors in the colloquy in this type of case. I hope I didn't say technical errors. I'm sure you didn't use the word technical errors, but Cochran makes clear that although the list of advisements the judges should make, Cochran leaves no doubt, you are powerfully emphasizing to district courts they should hit all the items on this list. Cochran also stops short of saying that those are mandatory things that must be ticked off on the pain of automatic reversal. Yeah. But we have the Duarte case seems very bad for your position here, because I guess if we had just stopped with Christensen, I might have been inclined to think that it was only for defendants who had some, you know, I guess, mental instability, let's say, as opposed to learning disabilities and the like. But Duarte seemed to extend, you know, the rule further, and I guess I'd like to hear what you have to say about that. Duarte is distinguishable for several reasons. First, Duarte, there's no evidence that the defendant in that case had this rich tapestry of past criminal jury trial experience like the defendant in this case. Second, in that case, I can't recall off the top of my head whether there was no colloquy at all or whether a very, very terse colloquy. My understanding of Duarte is defense counsel came in and said, we're going to waive a jury. Here's our written form. The defendant didn't even speak English, and there were deep questions about whether it was translated. And so I'd submit that Duarte is a case where when the jury validity question came up on appeal, there was a serious doubt in this Court's mind, based on the record, on whether the defendant in that case even knew what was going on when he was in court. He didn't understand English. He was a neophyte to the criminal process, and there had been some form slapped in front of him that it was unclear the extent to which it had been translated or whether he had had cognition of what was going on. Totally different case here. Mr. Shorty, again, all the prior criminal experience. This is his fifth, at least fifth, criminal prosecution. And this was a case where we led up to the colloquy with several statements by defense counsel in Mr. Shorty's presence saying we're considering waiving a jury, we're having a lot of tactical discussions outside of court about this. Then there's the waiver. Even after the waiver, on the date of the first bench trial, Mr. Shorty's allowed, again, to fire his retained attorney on the day of the trial to hire a new attorney. Even then, there's a 15-minute ex parte discussion with Mr. Shorty, Mr. Parzyk, his defense attorney at the time, and Judge Merguia. I don't know what was said during the ex parte conversation, but what is in the record, Judge Merguia comes back on the record and again comments on how, well, this was a very different case from Duarte, where it looked like it was a snap, you know, waving of a form that the defendant didn't even have in his native tongue. So I get — and then finally, the sophistication of the underlying crime in this case, I think, although not a large factor, should weigh in the Court's mind when deciding the — Mr. Shorty and his ability to understand a jury trial. Roberts. Let me ask you this. Let's say that we weren't inclined to follow the Second Circuit case and look at the fact that this person had been through a prior jury trial. It seems to me much of what we've heard from you this morning really hinges on our willingness to follow the Second Circuit's lead. We don't have a case that says that the fact that someone's been through a prior jury trial counts, right? There's a case that I — has not been cited in the briefs. I reviewed in preparation for our argument. I'd be happy to prepare a 28-J afterward. What's the case? It's called United States v. Garrison, and it deals with Feretta waivers, which I think is a good analogy for what happened here. And Garrison's a case where the defendant did a Feretta waiver, represented himself at trial. It's very, by analogy, very close call in this case. Goes up on appeal, and he says, the district court judge didn't hit the usual checklist of things that we should do before accepting a Feretta waiver. And this Court said, not so fast. We've looked in the PSR, and there were several times when in State court you executed a Feretta waiver and represented yourself at jury trials. That is the key factor in our analysis in deciding, we don't look at just what happened during this colloquy in a vacuum. We can look at your history and characteristics. And because, again, this isn't your first rodeo. We've been — you've been through this before. We aren't going to reverse on the ground that the colloquy wasn't technically perfect in this case. So I'd be happy to submit a 28-J, but I think that Garrison is the case that takes carmonate, all of the analysis, and brings it within the Ninth Circuit. Alito, what's the site? You don't have to submit a letter, but what's the site? 571 F. 3rd, 1001. So for all those reasons, I really think that, bottom line, the two cases the defendant depends on are Christensen and Duarte. And because of the defendant's history and background and all of the facts in this case before, during, and after the waiver, bearing on defense counsel's discussion of it, working with the defendant, Judge McGee's ex parte communications with him about it, this case is easily distinguishable from those cases. Thank you. Thank you, counsel. Thank you. Several points, Your Honors, in rebuttal. First of all, as to carmonate or carmonate, actually that case doesn't harm our position at all. In that case, it's true the defendant, the Second Circuit, did look at and decide to affirm largely because the defendant had had a jury trial. That defendant was a white-collar defendant. It was a bank fraud case, and he had been through a jury trial two years earlier on very similar charges. It's a world away from the facts we're talking about here. And that is true, as you'll see in the reply brief, all of the cases cited by the government for affirming involve sophisticated, articulate, intelligent defendants. Second, the government talks several times about the nature of Mr. Shorty's jury trial experience, quote, lots of experience with the jury system, a rich tapestry of experience with the criminal justice system. I think that's incorrect, with all due respect. And at page 7 of our reply brief, we talk about the exact nature of his criminal history. And apart from that 1994 jury trial, there's not much. There's a 1990 guilty plea when he was 20, a 1994 guilty plea, a 2000 guilty plea to a misdemeanor case. So I disagree with the characterization of his level of experience. Third, the government says there were multiple discussions in his presence about the tactical decision to waive his jury trial rights. As I read the record and as I recall it, there's one discussion, it seems, in his presence of the tactical reasons, and then there are multiple references to the fact that it is going to be a bench trial, but no further in-depth discussions. Fourth, regarding the motion in limine, I think that's a very important point. It is true that the government filed a motion in limine to preclude Mr. Shorty from testifying as to his state of mind, whether or not he believed that he had his gun rights restored. The government withdrew that motion in limine because it was a bench trial. Mr. Shorty didn't testify. That, I think, leads further doubt to whether he really did understand what was at stake and whether he really was a part of these decisions in any knowing way. And finally, distinguishing Cochran. Cochran, again, is a case coming out of this circuit in which there was a written waiver. So we've already got we're in the sphere where there is a presumption of a valid jury waiver. We don't have that here. And there was nothing in the record on Cochran to rebut the presumption. I see that my time is up. I may I ask? Scalia, just finish your line of thought. My last thought was just regarding Judge Murguia. After that, thank you, Your Honor, after that ex parte discussion, she didn't come out and say, as I read the record, yes, we've just had this technical discussion regarding the bench trial. She came out and said, well, we've had a discussion. There's going to be new counsel, and it is a bench trial. Thank you for your time, Your Honors, and thank you for your consideration. We ask that you vacate Mr. Shorty's convictions. Thank you, Counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Noonan, Watford